```
                     UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                           WESTERN DIVISION


LEE C. GRIGGERS,                  )  No. ED CV 07-00285-VBK
                                  )
               Plaintiff,         )  MEMORANDUM OPINION AND ORDER
                                  )
     v.                           )  (Social Security Case)
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social            )
Security,                         )
                                  )
               Defendant.         )
                                  )
```

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified Administrative Record ("AR"). After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**PLAINTIFF'S CONTENTIONS**

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly found that Plaintiff did not meet Listing 1.03B;
2. Whether the ALJ properly considered the treating physician's opinion of disability;
3. Whether the ALJ properly considered the State Agency opinion of functional status;
4. Whether the ALJ should have considered Plaintiff's mental impairment to be severe;
5. Whether the ALJ should have obtained testimony from a vocational expert ("VE").

**SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S CONCLUSION**

**THAT PLAINTIFF DID NOT MEET LISTING 1.03B**

At the third step of the five step sequential evaluation process, a determination is made as to whether the claimant has an impairment or combination of impairments that medically meet or equal the severity requirements of one of the listed impairments set forth in Appendix 1 to subpart P, 20 C.F.R. Part 404 (Listing of Impairments). At this step of the evaluation, the burden is on Plaintiff to prove that he meets or equals all requirements of a particular Listing. A Listing "... describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, ..." (20 C.F.R. §404.1525(a).) Medical equivalence is defined as an impairment that is "... at least equal in severity and duration to the criteria of any listed impairment." (20 C.F.R. §404.1526(a).) See also Tackett v. Apfel, 180 F.3d 1094, 1099

(9th Cir. 1999).

Here, Plaintiff claims that an employment accident which resulted in severe injury in the area of his left foot and ankle is an impairment of sufficient severity to meet Listing 1.03.[1]

An "inability to ambulate effectively," as set forth in the requirements of Listing 1.03, is defined in 1.00B2b as follows:

> "Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."

Plaintiff utilized an orththotic device (a corrective sole lift in his left shoe). (AR 149, 197.)  In that circumstance, §1.00J2 must be applied, and it is stated there that, "examination should be with the orththotic device in place and should include an evaluation of the individual's maximum ability to function effectively with the orthosis."

Plainly put, it was Plaintiff's burden to prove that he was

---

[1] In the Joint Stipulation ("JS"), Plaintiff misstates Listing 1.03. (JS at 3-5.) Listing 1.03 states in its entirety the following: "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."

unable to ambulate effectively.  Plaintiff did claim that he required use of a cane, but the medical evidence does not support this allegation.  The ALJ found that the record indicated Plaintiff had the ability to ambulate without a cane, although he did exhibit a left leg limp. (AR 36.)  This conclusion is based upon the findings of Dr. Drake, the consultative examiner ("CE"), who assessed the Plaintiff can walk without a cane. (AR 133.)  Plaintiff's treating physician stated that Plaintiff was able to stand or walk for up to two hours per day. (AR 149.)

The medical evidence does not support that Plaintiff meets or equals Listing 1.03.  The ALJ's conclusion was supported by substantial evidence, and the Court finds no error in Plaintiff's first issue.

**THE ALJ PROPERLY ASSESSED THE OPINION OF THE TREATING PHYSICIAN**

Plaintiff's second issue sets forth his contention that the ALJ did not properly consider the opinion of his treating physician, Dr. Holmboe.  Dr. Holmboe provided a report dated June 10, 2003 based upon treatment records (AR 149-150), and on November 8, 2002, Dr. Holmboe communicated some assessments in a document entitled "Verification of Physical or Mental Disability (Food Stamp Program)." (AR 128.)  Plaintiff recognizes that in the June 10, 2003 report, his treating physician opined that he could do sitting activities, on an "unlimited" basis, that he could drive an automobile, that he could walk for short distances from an automobile to a place of work, and that he could do up to one to two hours per day of standing or walking. (AR 149, JS at 8.)  Plaintiff's contention, however, is that the ALJ failed to take notice of Dr. Holmboe's earlier report of

4

November 8, 2002 in which he provided the opinion that Plaintiff is mentally or physically unfit for gainful employment as a result of "severe ankle/foot deformity/arthritis and limb length discrepancy." (AR at 128, JS at 8.)

The ALJ found that Plaintiff is capable of sedentary work (AR 39, Finding 5), and based this conclusion in large part on the findings of the treating physician. The ALJ also gave substantial weight to opinions of State Agency physicians who had reviewed Dr. Holmboe's treatment records and the findings of the CE, Dr. Drake, who also concluded that Plaintiff is capable of sedentary work. (AR 38, 134-141, 162-169.) Since these non-examining physicians' opinions were consistent with the medical record, the ALJ was entitled to rely upon them. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

The question, then, is whether the ALJ missed something of substantial value by failing to mention the treating physician's statements in the November 2002 report concerning qualification of Plaintiff for food stamps. The Court concludes that he did not, in that it is the ALJ's function to review the medical evidence as a whole, and to provide an interpretation of it. Dr. Holmboe's November 2002 conclusions as to disability are certainly not binding on the Commissioner, whose responsibility it is to determine the question of whether an individual is or is not disabled. Moreover, as a conclusory opinion on the ultimate question of disability, the ALJ was not bound to accept this statement. See Nyman v. Heckler, 779 F.2d 528 (9th Cir. 1985).

Plaintiff does not dispute that the exertional limits assessed by Dr. Holmboe in the 2003 report are consistent with a sedentary exertional capability. Indeed, they are. (See 20 C.F.R. §416.967(a).)

Plaintiff also notes Dr. Holmboe's notation in his June 10, 2003 report that Plaintiff has pain on a daily basis and that pain may also limit his activities to some degree. (See AR at 149, JS at 9.)  But, Dr. Holmboe clearly incorporated an assessment of Plaintiff's pain when he formulated his conclusions as to Plaintiff's exertional abilities.  The ALJ noted that Plaintiff's ability to perform sedentary exertional work was supported by the conclusions of his treating physician, and further noted that Plaintiff's allegations regarding the extent of his pain and functional limitations were not fully supported by the medical record. (AR at 37.)  Plaintiff does not challenge the ALJ's credibility findings, which included the component of subjective pain.

The Court finds no error as to Issue No. 2.

**THE ALJ DID NOT ERR IN ASSESSING PLAINTIFF'S**

**MENTAL RESIDUAL FUNCTIONAL CAPACITY**

Plaintiff's third issue is that the ALJ failed to properly evaluate his mental functioning.  In particular, Plaintiff notes that a State Agency reviewing psychiatrist, Dr. Williams, completed a Mental Residual Functional Capacity Assessment of September 3, 2003, in which it was noted that Plaintiff was "moderately limited" in his ability to interact appropriately with the general public, and in his ability to respond appropriately to changes in the work setting. (JS at 13, AR at 171.)

In evaluating psychiatric impairments, 20 C.F.R. §404.1520a(e)(1) and §416.920a(e)(1) require that consideration be given, among other things, to activities of daily living ("ADL"); social functioning; concentration, persistence or pace; and episodes of decompensation.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require that consideration be given to "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to chronic mental disorders, structured settings, medication and other treatment."

20 C.F.R. §§404.1545(c) and 416.945(c) require that consideration be given to "residual functional capacity for work activity on a regular and continuing basis" and "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, [which] may reduce your ability to ... work."

The types of relevant evidence to be assessed in making these considerations are set forth in Social Security Ruling ("SSR") 85-16, which include such factors as history, findings, and observations from medical sources, reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior.

Under 20 C.F.R. §404.1520a(c)(2) and §416.920a(c)(2), consideration must be given to the extent to which a mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis ..."

The degree of functional limitations in four broad areas (ADLs; social functioning; concentration, persistence or pace; and episodes of decompensation) are evaluated; that is, as to the first three functional areas, the following five-point scale is utilized: none, mild, moderate, marked, and extreme. With regard to the fourth area,

a four-point scale is utilized: none, one or two, three, four or more. (20 C.F.R. §§416.920a(3),(4) and 404.1520a(c)(3),(4).

Following the September 2000 amendments to the regulations which modified 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the Administrative Law Judge ("ALJ") is no longer required to complete and attach a Psychiatric Review Technique Form ("PRTF"). Instead, these regulations require that in the decision, the ALJ,

> "[M]ust incorporate the pertinent findings and conclusions based on the [PRTF] technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." [That is, ADLs; social functioning; concentration, persistence or pace; and episodes of decompensation.]

Further guidance is provided in SSR 85-16, which, although it does not specifically mention concentration, persistence or pace, does note, "Ability to sustain activities, interests, and relate to others over a period of time. The frequency, appropriateness, and independence of the activities must also be considered" as well as "ability to function in a work-like situation."

When there is finding of "moderate" difficulties in the area of maintaining concentration, persistence or pace, this factor must be included in any hypothetical question posed at a hearing to a vocational expert ("VE"). Thus, one court has held that referring

8

merely to "simple jobs" or "unskilled sedentary work" in a hypothetical question is insufficient to describe and to accommodate difficulties in this functional area. See Newton v. Chater, 92 F.3d 688 (8th Cir. 1996).

The regulations do not provide a standard definition of "moderate." (See 20 C.F.R. §416.902a(c)(4).) They do note, however, that a finding of "none" or "mild" in the first three areas "will generally [mean] that your impairment(s) is not severe, ..." See 20 C.F.R. §920a(d)(1).

In LaCroix v. Barnhart, 465 F.3d 881, 888 (8th Cir. 2006), the Eighth Circuit upheld an ALJ's finding that a claimant found to have a moderate limitation in her ability to respond appropriately to work pressures in a usual work setting would still be able to satisfactorily function in this area. (See Id. at 888.) The appellate Court noted that the evaluation form (HA-11) defined moderate as indicating that the individual could still function satisfactorily. (See, Id.)

Here, Dr. Williams indicated that Plaintiff only had "mild" difficulties in maintaining social functioning, but found no restrictions in the remaining areas of activities of daily living; maintaining concentration, persistence or pace; and there were no episodes of decompensation. (AR 184.) Thus, Plaintiff presented at best with "mild" limitations, which typically correlates with a non-severe mental impairment. See 20 C.F.R. §416.920a(d)(1).

Based on the foregoing, the Court concludes that the ALJ correctly concluded that Plaintiff's mental impairment was not severe.

In Plaintiff's fourth issue, which is related to the third issue, he questions whether the ALJ should have considered his mental

impairment to be non-severe. In fact, the ALJ did find that Plaintiff suffers from a depressive disorder, but that this impairment "has resulted in no restrictions of his activities of daily living and mild difficulties in maintaining social functioning." (AR 35.)  As the Court has noted in its discussion of the third issue, the evidence in the record indicates that the existence of at best mild limitations in only one of the four broad functional areas supports the assessment of a non-severe depressive disorder which would have no more than a minimal effect on Plaintiff's ability to do basic work activities. Consequently, the Court finds no error pertaining to Issue No. 4.

## **THE ALJ WAS NOT REQUIRED TO OBTAIN TESTIMONY**
## **FROM A VOCATIONAL EXPERT**

In Plaintiff's fifth and final issue, he asserts that even if, assuming arguendo, he does not meet Listing 1.03B, based on his asserted moderate mental limitations, and the existence of possible pain, the ALJ should have utilized a vocational expert ("VE") to assist in the decision-making process. (JS at 18.)  Essentially, Plaintiff claims that it was erroneous for the ALJ to rely upon the Grids, because of the existence of these non-exertional limitations. But here, the particular non-exertional limitations asserted by Plaintiff were insignificant, for the reasons already discussed by the Court in this Opinion.  Therefore, it was not erroneous for the ALJ to rely upon the Grids, since they provide a complete and accurate representation of Plaintiff's limitations.  Here, Grid Rules 201.25 and 201.26, relied upon by the ALJ, do in fact apply and do direct a finding of "not disabled."  These Grid Rules did in fact coincide with Plaintiff's assessed residual functional capacity (an ability to

perform exertional work at the sedentary level), and for this reason, the ALJ was not required to obtain additional testimony from a VE. (See Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573 (9th Cir. 1988).

There is no error as to Issue No. 5.

For the foregoing reasons, the Decision will be affirmed, and the matter will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: January 3, 2008            /s/
                                  VICTOR B. KENTON
                                  UNITED STATES MAGISTRATE JUDGE